**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CANDICE L. GULLEY, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:23-cv-90-ECM** |
| | ) | |
| **HANSEN & ADKINS AUTO** | ) | |
| **TRANSPORT, INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## REPLY BRIEF OF  DEFENDANT, MOLO SOLUTIONS, LLC F/K/A DJM LOGISTICS, LLC D/B/A MOLO SOLUTIONS, IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND

_____

**JOEL H. PEARSON (ASB-8033-N71J)**
*Attorney for Defendant*

**OF COUNSEL:**
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
445 Dexter Avenue, Suite 9045
Montgomery, Alabama 36102-2148
Telephone:     334-387-7680
Facsimile:     334-387-3222
E-mail: jpearson@ball-ball.com

# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................. 1

II.   PLAINTIFFS' RED-HERRING ARGUMENTS .................................................... 2

    a. Plaintiffs' Argument that MoLo's Notice of Removal Was Procedurally
    Flawed Is Incorrect ................................................................................... 3

    b. Plaintiffs Are Attempting to Rewrite Their Pleadings. ....................................... 4

III.  LAW & ANALYSIS ............................................................................................ 4

    a. 28 U.S.C. § 1337 ...................................................................................... 5

    b. Substantial Federal Question Doctrine ............................................................ 6

    1. COMPLETE PREEMPTION OF CLAIMS AGAINST FREIGHT
    BROKERS ................................................................................................. 9

    2. WHAT IS MOLO AND WHAT IS IT BEING SUED FOR IN THIS
    CIVIL ACTION? ....................................................................................... 12

    3. THE COURT HAS A CHOICE AND MOLO WOULD SUBMIT THAT
    *ITS* INTERPRETATION OF THE FAAAA IS MORE FAITHFUL TO
    *ROWE* AND THE STATUTORY REGIME GOVERNING FREIGHT
    BROKERS ................................................................................................. 13

    4. PLAINTIFFS' ANALYSIS OF THE SAFETY REGULATION
    EXCEPTION IS ERRONEOUS. ................................................................... 16

    5. MOLO IS NOT AFRAID OF THE *MILLER V. C.H. ROBINSON*
    RULING. ................................................................................................... 18

    6. ATTORNEY'S FEES AND COSTS SHOULD NOT BE AWARDED. ......... 20

IV.   CONCLUSION ................................................................................................. 20

i

# TABLE OF AUTHORITIES

*Cases*

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) ..................................................9, 11

*Am. Trucking Associations, Inc. v. City of Los Angeles*, 133 S. Ct. 2096 (2013).........................10

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) ...........................................11

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987).......................................................11

*City of Columbus v Ours Garage & Workers Service, Inc.*, 536 U.S. 424, 442 (2002) ...............18

*Creagan v. Wal-Mart Transp., LLC*, 354 F.Supp.3d 808 (N.D. Ohio 2018)....................15, 17, 18

*Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665 (N.D. Ga. 1997).........................................................................................11

*Estate of Flanagan v. BNSF Railway Co.*, 1:21-cv-00014 (S.D. Iowa Nov. 19, 2021).... 15, 16, 17

*Gauthier v. Hard to Stop LLC*, No.: 6:20-cv-93, 2022 WL 344557
(S.D. Georgia, Feb. 4, 2022).........................................................................16, 17, 18

*Georgia Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857 (N.D. Ill. Oct. 26, 2017) ...................................................................................................4, 15

*Gillum v. High Standard, LLC*, Civil Action No. SA-19-CV-1378-XR
(W.D. Tex. Jan. 27, 2020)...........................................................................3, 4, 14, 15, 18

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ........................6, 8

*Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325 (8th Cir. 2016) .................................................................................................6

*Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)...........................................................11

*Gunn v. Minton*, 568 U.S. 251 (2013).......................................................................6

*Jackson v. Stevie Trucking Corp.*, Case No. 2019-4634, Civil District Court for the Parish of Orleans, State of Louisiana .......................................................................15

*Krauss v. IRIS USA, Inc.*, 2018 WL 2063839 (E.D. Penn. May 3, 2018) ................................3, 15

*Krauss v. IRIS USA, Inc.*, 2018 WL 3632107 (E.D. Penn. July 31, 2018) ....................................15

*Lee v. Werner Enterprises, Inc.*, Civil Action No. 3:22-cv-91
(N.D. Ohio, Nov. 3, 2022) ........................................................................................16, 17

*Lopez v. Amazon Logistics, Inc.*, 458 F.Supp.3d 505 (N.D. Tex. 2020).........................................18

*Loyd v. Paul Salazar d/b/a RAS Trucking*, 2019 WL 4577108
(W.D. Okla. Sept. 20, 2019) .....................................................................................15, 18

*McCarter v. Ziyar Express, Inc., et al.*, 2023 WL 144844 (N.D. Ohio, Jan. 10, 2023)...........14, 16

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986).........................................................6

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987).......................................................................11

*Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016 (9th Cir. 2020) .................16, 18, 19, 20

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ..........................................9, 10, 11,12

*Non Typical, Inc. v. Transglobal Logistics Grp. Inc.*, Nos. 10–C–1058, 11–C–0156, 2012 WL
1910076 (E.D. Wis. May 28, 2012)..........................................................................................9, 11

*Rowe v. N.H. Motor Transp. Ass'n.*, 552 U.S. 364, 128 S. Ct. 989, 169 L.Ed. 2d 933
(2008) ................................................................................................................10, 13, 14, 17

*Simpson, et. al. v. Omega Precision, Inc.*, Case No. 34-2017-00210287, Superior Court of the
State of California, County of Sacramento ..............................................................................12, 15

*Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998) ..................................................................11

*Volkova v. C.H. Robinson Co.*, 2018 WL 741441 (N.D. Ill. Feb. 7, 2018) ............................15, 17

*Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998) ...............................................................6

*Zamorano v. Zyna LLC*, Civil Action No. SA-20-00151-XR (W.D. Tex. May 11, 2020)..4, 14, 15

*Statutes*

108 Stat. 1605-06 ......................................................................................................2

28 U.S.C. § 1331 ...................................................................................................2, 12

28 U.S.C. § 1337 .......................................................................................................5

28 U.S.C. § 1441(a) .................................................................................................12

28 U.S.C. § 1441(c) ...................................................................................................3

28 U.S.C. § 1446(b)(1) ..............................................................................................1

49 U.S.C. § 13102(23) ..........................................................................................9, 10

49 U.S.C. § 14501(b)(1) ................................................................................. 9, 14, 19

49 U.S.C. § 14501(c)(1) ..............................................5, 8, 9, 10, 12, 14, 19, 20

49 U.S.C. §14501(c)(2)(A) ..............................................................................16, 17, 18

49 U.S.C. §14916 .......................................................................................................5

Motor Carrier Act of 1980, 94 Stat. 793 ...............................................................9

*Regulations*

49 C.F.R. 371.2 ....................................................................................................8, 13

49 C.F.R. 371.2(a) .....................................................................................................8

49 C.F.R. 371.2(c) .................................................................................................8, 13

*Treatises*

18 *J. Moore et al., Moore's Federal Practice* § 134.02[1] [d], p. 134–26 (3d ed.2011)...............14

**REPLY BRIEF OF  DEFENDANT, MOLO SOLUTIONS, LLC F/K/A DJM
LOGISTICS, LLC D/B/A MOLO SOLUTIONS, IN OPPOSITION TO
PLAINTIFFS' EMERGENCY MOTION TO REMAND**

**COMES NOW**, Defendant Molo Solutions, LLC f/k/a DJM Logistics, LLC d/b/a

MoLo Solutions ("MoLo"), and pursuant to this Honorable Court's Order (Doc. 14), and

respectfully submits this Memorandum to explain why this Court should deny Plaintiffs'

Emergency Motion to Remand, Doc. 13. For the reasons set forth herein, this matter is

removable.

## I.      BACKGROUND

As discussed in detail below, this case was timely and properly removed to this

Court on February 10, 2023. Doc. 1; Doc. 12-13 at pp. 244 and 451. *See* 28 U.S.C. §

1446(b)(1).  On February 24, 2023, Plaintiffs filed their Emergency Motion to Remand

(Doc. 13), arguing that the Court did not have federal question jurisdiction, suggesting that

no federal statute was implicated by Plaintiffs' lawsuit, preemption did not apply to the

facts of this case, and MoLo's Notice of Removal was procedurally defective.

Plaintiffs allege in the Third Amended Complaint that they were injured as a result

of an accident that occurred on June 19, 2021, in Butler County, Alabama.  *See* Doc. 12-

13 at pp. 168-169.  Plaintiffs' Third Amended Complaint at multiple paragraphs judicially

admits that MoLo was the freight broker for the cargo being hauled by Asmat Investment,

LLC d/b/a Asmat Express ("Asmat") and it is as a result of these brokerage services that

MoLo is being sued in this civil action.  *See* Doc. 12-13 at pp. 161, 167, 187-188, Third

Amended  Complaint  at  ¶¶  Unnumbered  Introduction,  27,  Count  Fourteen  ("Broker

Liability – MoLo Solutions, LLC . . .").  Plaintiffs' allegations against MoLo make it clear that MoLo is being sued for its role as a federally licensed freight broker.

Consequently, Plaintiffs' claims are undeniably directed at MoLo's acts as a licensed freight broker.  Pursuant to the Federal Aviation Administration Authorization Act ("FAAAA"), 108 Stat. 1605-06, all such claims against a federally licensed freight broker are preempted. Therefore, there is absolutely no doubt that this Court has federal question jurisdiction over the claims levied against MoLo as a freight broker.  *See* 28 U.S.C. §1331.  For these reasons and those set forth with greater particularity below (and in MoLo's Motion to Dismiss), Plaintiffs' arguments are incorrect and unavailing, and their Motion to Remand should be denied in its entirety.

**Also, to be clear, MoLo is not asking this Court to take control of the litigation arising from this multivehicle accident.  Instead, MoLo is simply asking this Court to resolve a discrete question of federal law and how it applies to a creature of federal statutory construction, i.e., a federally licensed freight broker.  If MoLo is correct, then it and this civil action's presence in this Court will be fleeting.  If the Court agrees with MoLo and dismisses all of the claims asserted against it, then this Court will be divested of jurisdiction and this matter will return to state court.**

## II.   PLAINTIFFS' RED-HERRINGS ARGUMENTS

Plaintiffs' Motion to Remand contains two red-herring arguments: (1) Plaintiffs contend that MoLo's Notice of Removal was procedurally flawed, and (2) Plaintiffs are seeking to rewrite their pleadings to allege that MoLo was a motor carrier.  As discussed below, Plaintiffs are incorrect in their assertion that MoLo's Notice of Removal was

procedurally flawed because Samsara did not consent to the removal of this matter. Further, MoLo is not a motor carrier.

### a. Plaintiffs' Argument that MoLo's Notice of Removal Was Procedurally Flawed Is Incorrect.

Plaintiffs contend that MoLo's Notice of Removal was procedurally deficient because Samsara did not consent to the removal of this matter. MoLo notes that these matters were removed to federal court without the consent of all defendants and upon the reliance of 28 U.S.C. § 1441(c)(2). MoLo is not obligated to seek the consent of any non-freight broker defendant in connection with this Notice of Removal. *See* 28 U.S.C. § 1441(c)(2) ("Only defendants against whom a claim described in paragraph (1)(A) [original jurisdiction] has been asserted are required to join in or consent to the removal under paragraph (1)"). The only defendant that also serves as a freight broker is Hansen & Adkins Auto Logistics, Inc. Hansen & Adkins Auto Logistics, Inc. has consented to this removal. *See* Doc. 1-8 at p.2.

In *Gillum v. High Standard, LLC*, Civil Action No. SA-19-CV-1378-XR (W. D. Tex. Jan. 27, 2020), the court addressed claims identical to those in the current case. In that case, the plaintiff sued a driver, several trucking companies, and a freight broker. The court held the claims were preempted and removal was proper before remanding the matter back to state court to address the claims against the remaining defendants. The court recognized that the claims made by the plaintiff related to the services provided by a broker: "In essence, Plaintiff claims that [the broker] was negligent in arranging for the transportation of property between motor carriers. These allegations 'go to the core of what it means to be a careful broker.'" *Gillum at *8* (quoting *Krauss v. IRIS USA, Inc.*, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018)). A claim against a freight broker under a negligent hiring theory, based upon the selection of a carrier is completely

preempted under the FAAAA.  *See id*; *see also Georgia Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857 (N.D. Ill. Oct. 26, 2017).  Consent was raised as an issue in *Gillum*, but remand was not granted on that basis.  The statutes give the Court the authority to sever the other non-removable claims.  As a practical matter and as happened in *Gillum* and *Zamorano v. Zyna LLC, Civil Action No. SA-20-00151-XR (W.D. Tex. May 11, 2020)*, the granting of preemption caused the claims against the freight broker to be dismissed and the matter remanded back to state court for further proceedings.  MoLo submits that this is a non-issue.

### b.  Plaintiffs Are Attempting to Rewrite Their Pleadings

In an attempt to rewrite their pleadings without actually amending them, Plaintiffs argue extensively in their Motion to Remand that MoLo is a motor carrier and is being sued as such.  All that this Court need to do to see through this false issue is look at the opening paragraph of Plaintiffs' Third Amended Complaint which states clearly and unambiguously:

> **THIRD AMENDED COMPLAINT**
>
> Plaintiffs amend to add MoLo Solutions, LLC, the broker who arranged the shipment Defendants Asmat and Takelu were carrying when Takelu crashed into the Girls' Ranch van, and its parent company, ArcBest Corporation. The new allegations can be found at paragraphs 17-18 and 26-27 as well as Counts 14 and 15 below:

Doc. 12-13 at p. 161.

### III.   LAW & ANALYSIS

In its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

("Motion to Dismiss")[1], MoLo argued that all of the claims advanced against it are specifically preempted by 49 U.S.C. §14501(c)(1). MoLo maintains that removal was proper on the basis that the issue of preemption raised a federal question, which gives this Court jurisdiction.  However, MoLo would note that Plaintiffs' Motion to Remand seeks to conflate the issue of the Court's jurisdiction over this matter with the issue of whether or not the claims advanced are expressly pre-empted.  Therefore, even though Plaintiffs' claims are subject to preemption and therefore federal jurisdiction, MoLo takes this opportunity to refocus the Court's attention on the fact that it has jurisdiction over this matter irrespective of whether there is express preemption under the facts and circumstances here involved, or not.  In the remainder of this Opposition, MoLo will address the narrow issues raised in Plaintiffs' Motion to Remand.

### a.  28 U.S.C. § 1337

Freight brokers are creatures of federal statute.  They are specifically defined by Congress as entities that arrange for both the intrastate and interstate movement of cargo via motor carriers. They require a federal license to operate.  Entities who engage in these activities without proper licensure are engaged in unlawful activity under federal law.  *See* 49 U.S. Code § 14916 ("Unlawful brokerage activities").  Thus, claims that seek to regulate the activities of a licensed freight broker do arise under an Act of Congress regulating commerce or protecting trade and commerce against restraint.  *See* 28 U.S.C. § 1337.

---

[1] MoLo hereby adopts and incorporates as if restated herein all of the arguments and authorities cited in its Motion to Dismiss, Doc. 9, MoLo's Brief in support of Motion to Dismiss (Doc. 10), and in this Reply Brief in Opposition to Emergency Motion to Remnd — which demonstrate why Plaintiffs' claims against MoLo are subject to pre-emption.

### b. Substantial Federal Question Doctrine

As this Court knows, "[f]ederal question jurisdiction exists if the well-pleaded complaint establishes either [1] that federal law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (quoting *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998)). The first path, in which federal law creates the cause of action, is the most common path to federal-question jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The second path, in which the well-pleaded complaint raises "significant federal issues," *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), is much less common. The United States Supreme Court recently explained the second path to federal-question jurisdiction as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (interpreting *Grable*).

In connection with the foregoing, in addition to fitting the first path, the instant dispute against a federally licensed freight broker arising from its licensed and statutorily defined activities fits this second and separate path as well. More particularly:

(1) Plaintiffs' right to relief necessarily depends on the resolution of a substantial question of federal law, i.e., the appropriate standard of care when selecting motor carriers.

(2) Plaintiffs' allegations invoking state law negligence claims represent a dispute as to the effect and breadth of federal law as it concerns freight brokers.

(3)  The federal issue is substantial because if Plaintiffs are correct that state law applies, freight brokers by necessity must conform to a patchwork of state-law based duties of care when selecting motor carriers to haul freight through intrastate commerce in multiple states.

(4) To the extent this Court may enforce the intent of Congress to constrain the power of the states to regulate the interstate/intrastate transportation of goods as expressly provided by the FAAAA, this does not disrupt the federal/state balance approved by Congress.

MoLo would submit that by their own words, Plaintiffs confirm that they seek to create a state-law duty of care for federally licensed freight brokers. *See generally* Doc. 12-13 at pp. 161-1 and 187-190 (Plaintiffs' Third Amended Complaint) and Doc. 13 (Plaintiffs' Motion to Remand).  There is undoubtedly a substantial question of federal law present— the appropriate standard of care when selecting motor carriers.  This standard of care issue involving a federally licensed freight broker gives rise to federal question jurisdiction.

Such a ruling in Plaintiffs' favor will result in a patchwork of state law regarding the duties of brokers.  MoLo's point is this:  what if MoLo needed to arrange the transportation of a load of cargo from Texas to the state of Alabama?  A motor carrier would potentially pass through at least 4 states on that journey.  If Plaintiffs' conclusion is right, then each state through its courts could establish its own framework and a freight

broker would need to comply with 50 different regimes.  What if a Texas jury applying Texas law says that only motor carriers with a "SATISFACTORY" rating can pass through Texas' borders while a Louisiana jury applying Louisiana law says that being "UNRATED" is fine and so on and so forth?  What if a Mississippi jury applying Mississippi law adds an additional requirement that a motor carrier can only pass through Mississippi if it has had a "SATISFACTORY" rating for 10 years?  Is a freight broker supposed to retain multiple motor carriers like a relay team to navigate these different requirements?  This would lead to gross inefficiencies.  The COVID-19 pandemic has exposed what happens when individual states begin restricting interstate movements, leading to gross bottlenecks in both transportation and logistics.  It causes massive disruptions of supply chains.  MoLo would submit that the federal government has already established a "standard of care."  *See* 49 C.F.R. § 371.2(a) which states in pertinent part, "Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property *by an authorized* motor carrier." (emphasis added).  Plaintiffs have not alleged that Asmat was not "an authorized motor carrier."

Plaintiffs archly imply that MoLo does not actually cite the provisions of the statutes at issue or explain how they affect the standard of care in order to invalidate MoLo's argument under the *Grable* test.  MoLo contends there is ample statutory authority witnessed by the interplay between the statutory definitions (e.g., 49 C.F.R. § 371.2(a) and 49 C.F.R. § 371.2(c)) and the statutes addressing the prohibition on state law intervention (e.g., 49 U.S.C. § 14501(c)(1)). MoLo has clearly articulated the provisions of the statutes, contrary to Plaintiffs' contentions otherwise. Plaintiffs summarily dismiss the remaining

prongs with scant analysis. To that end, while Plaintiffs  may consider their claims to be "garden-variety tort claims" it remains that those claims fall within the category of claims preempted by 49 U.S.C. § 14501(c)(1) and 49 U.S.C. § 14501(b)(1), because "[s]tate common law counts as an 'other provision having the force and effect of law.'" *See Non Typical, Inc. v. Transglobal Logistics Grp. Inc.*, Nos. 10–C–1058, 11–C–0156, 2012 WL 1910076, at *2 (E.D. Wis. May 28, 2012) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n. 8 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388 (1992)).

To that end, this Court should find as a matter of law that removal under these two separate bases is appropriate and it should exercise its explicit jurisdiction over this case.

### 1. COMPLETE PREEMPTION OF CLAIMS AGAINST FREIGHT BROKERS.

In 1980, Congress deregulated interstate trucking so that the rates and services offered by trucking companies and related entities would be set by the market rather than by government regulation. *See* Motor Carrier Act of 1980, 94 Stat. 793. Later, in 1994, to bolster deregulation, Congress included a provision within the FAAAA, which expressly provides that state regulation of the trucking industry is preempted:

> *no State* or political subdivision thereof and no intrastate agency or other political agency of 2 or more States *shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to* intrastate rates, intrastate routes, or *intrastate services of any freight* forwarder or *broker.*

49 U.S.C. § 14501(b)(1) (emphasis added). In turn, the term "transportation" includes:

> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
> (B) *services related to that movement, including arranging for*, receipt,

delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102(23) (emphasis added).  As the statutory language makes clear, the "services" provided by a freight broker are those services arranging for the transportation of goods via motor carriers.

In interpreting § 14501(c)(1), the Supreme Court has determined:

(1) that [s]tate enforcement actions having a connection with, or reference to carrier rates, routes, or services are preempted; (2) that such preemption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to preemption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that preemption occurs at least where state laws have a significant impact related to Congress' deregulatory and preemption-related objectives.

*Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 370, 370-71 (2008) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)) (internal citations and punctuation omitted).

Therefore, under *Rowe*, FAAAA preemption is broad in scope, and occurs even if the state law's effect on "rates, routes, or services is only indirect." *Id.* Although the outer limits of FAAAA preemption have not been articulated, the Supreme Court has recognized that some state laws, such as those that affect trucking in only a tenuous, remote, or peripheral manner (e.g., those forbidding gambling) are not preempted. *Id.* at 371. Following *Rowe*, courts continue to apply FAAAA preemption broadly against state laws that fall within the preemption clause's reach. *See, e.g., Am. Trucking Associations, Inc. v. City of Los Angeles*, 133 S. Ct. 2096 (2013) (holding certain local ordinances governing transportation from the Port of Los Angeles were preempted).  Importantly, the FAAAA

10

preempts not only state statutes and administrative regulations governing the trucking industry, but also state-law private causes of action which come within its terms. *See, e.g., Smith v. Comair, Inc.*, 134 F.3d 254 (4th Cir. 1998); *Deerskin Trading Post, Inc. v. United Parcel Service of America, Inc.*, 972 F. Supp. 665, 672 (N.D. Ga. 1997).  That is because "[s]tate common law counts as an 'other provision having the force and effect of law.'" *Non Typical, Inc. v. Transglobal Logistics Grp. Inc.*, Nos. 10–C–1058, 11–C–0156, 2012 WL 1910076, at *2 (E.D. Wis. May 28, 2012) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n. 8, (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388 (1992)).

MoLo does not dispute that the "well-pleaded complaint" doctrine guides jurisdictional matters. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936). The allegations of the complaint determine whether the claim arises under state or federal law, making the plaintiff master of his pleadings. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Ordinarily, federal preemption is a defense to a plaintiff's suit and, as such, does not authorize removal because it does not appear on the face of the complaint. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). An exception to both rules exists; however, "when a federal statute wholly displaces the state law cause of action through complete pre-emption . . . [such that] a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Plaintiffs' Motion to Remand completely ignores this key authority.

In cases of complete preemption, a defendant may remove the claim to district court

pursuant to 28 U.S.C. § 1441(a) because the district court has original jurisdiction of the claim as it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Based on the plain language of the statute, the Supreme Court held that Congress "express[ed] a broad pre-emptive purpose" in the area of airline regulation. *Morales*, 504 U.S. at 383.  Likewise, in this case, Plaintiffs' claims for negligence (direct or otherwise) are completely preempted and give rise to federal subject matter jurisdiction since they unquestionably relate to and would directly impact MoLo's prices, routes, or services as a freight broker.

### 2. WHAT IS MOLO AND WHAT IS IT BEING SUED FOR IN THIS CIVIL ACTION?

Faced with this removal to federal court, Plaintiffs are purposefully trying to dance around what they are suing MoLo for in this civil action to avoid the unambiguous preemption provided by 49 U.S.C. § 14501(c)(1).  These discussions often get ephemeral; however, MoLo feels that it is important that this Court remember:

> A freight broker is not a motor carrier.  The broker does not control the means by which the motor carrier completes its task.  At no time does the broker have care, custody or control over the cargo or the means of transportation.  The preemption set forth in 49 U.S.C. § 14501(c)(1) provides statutory protection in recognition of the broker's limited role.

*See Simpson v. Omega Precision, Inc.*, Case No. 34-2017-00210287, Superior Court of the State of California, County of Sacramento.  The dispute in these types of civil actions always revolves around the question:  What are the "services" of a freight broker? Plaintiffs have not even addressed the federal regulation that defines services.  MoLo

simply asks this Court to apply Congress' definition of "services" to Plaintiffs' allegations in its lawsuit against MoLo.   Due to federal regulations providing the definition of "services" as it applies to freight brokers, reliance on cases interpreting the Airline Deregulation Act is unnecessary.   The federal government has spoken.

To that end, at 49 C.F.R. § 371.2, the Code of Federal Regulations lists definitions applicable to freight brokers.   At subsection (c), the federal government explicitly defines "brokerage service" as "the arranging of transportation."   *See* 49 C.F.R. § 371.2(c). Plaintiffs have unquestionably sued MoLo because they appointed a motor carrier that was allegedly involved with the transportation chain of cargo that led to alleged personal injuries.   Thus, Plaintiffs' claims relate to MoLo's "services" as a freight broker. Moreover, as those claims relate to a broker's "services," they are preempted.   That is all MoLo asks—nothing more, nothing less.

### 3.   THE COURT HAS A CHOICE AND MOLO WOULD SUBMIT THAT *ITS* INTERPRETATION OF THE FAAAA IS MORE FAITHFUL TO *ROWE* AND THE STATUTORY REGIME GOVERNING FREIGHT BROKERS.

Admittedly, courts are divided on the issue currently before this Court: whether negligent hiring claims against freight brokers are preempted by the FAAAA when the alleged negligence results in personal injury.   Frankly, the decisions nationwide and even in the Eleventh Circuit are all over the map.   MoLo has not tried to hide this fact.   MoLo's Motion to Dismiss addressed the major cases on this dispute and distinguished them. Plaintiffs have pointed to some district court cases from the Eleventh Circuit and this District suggesting that this Court is bound to follow them.   As this Court knows, "A decision of a federal district court judge is not binding precedent in either a different

judicial district, the same judicial district, or even upon the same judge in a different case."
18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011).

The simple and unvarnished truth is that two lines of cases have developed around the interpretation of 49 U.S.C. § 14501(b)(1) and (c)(1) and the guidance from *Rowe*. Some courts have found that the FAAAA does not preempt personal injury claims against freight brokers, while a growing set of courts have found the opposite. Of note and in direct contravention to Plaintiffs' argument that MoLo's position in its Notice of Removal is somehow fringe, in the time while this matter has been pending, another federal court has ruled that 49 U.S.C. § 14501(c)(1) preempts personal injury claims that are advanced against a freight broker. *See McCarter v. Ziyar Express, Inc., et al.*, 2023 WL 144844 (N.D. Ohio, January 10, 2023).

MoLo could write a tome dissecting the cases that Plaintiffs have cited to in their Motion to Remand. That would not, however, serve to move this matter further. The Court in this instance must decide as to which line of cases is correct and which analysis is more compelling. MoLo would direct this Court to some of the most recent federal cases supporting FAAAA preemption **and** approving of removal on said grounds. The United States District Court for the Western District of Texas found that negligence-based claims against a freight broker are preempted by the FAAAA. *See Gillum v. High Standard, LLC*, Civil Action No. SA-19-CV-1378-XR (W.D. Tex. Jan. 27, 2020) and *Zamorano v. Zyna LLC*, Civil Action No. SA-20-00151-XR (W.D. Tex. May 11, 2020). The *Gillum* court addressed claims identical to those in the current case. In that case, the plaintiff sued a driver, several trucking companies, and a freight broker for claims arising from an intrastate

14

movement.  That court held the claims were preempted.  The court properly recognized that the claims made by the plaintiff related to the services provided by a broker: "In essence, Plaintiff claims that [the broker] was negligent in arranging for the transportation of property between motor carriers. These allegations **'go to the core of what it means to be a careful broker.'"** *Gillum*, at *8 (quoting *Krauss v. IRIS USA, Inc.*, 2018 WL 2063839, at *5 (E.D. Pa. May 3, 2018)) (Emphasis added).  A claim against a freight broker under a negligent hiring theory, based upon the selection of a carrier is completely preempted under the FAAAA.  *See id*; *see also Georgia Nut Co. v. C.H. Robinson Co.*, No. 17 C 3018, 2017 WL 4864857 (N.D. Ill. Oct. 26, 2017).  MoLo submits that the ruling in *Gillum* is on four squares with the claims in this matter and the thoughtful and in-depth analysis provided by that Court is instructive in this instance. *See also Volkova v. C.H. Robinson Co.,* 2018 WL 741441 (N.D. Ill. Feb. 7, 2018); *Krauss v. Iris USA, Inc.*, 2018 WL 2063839 (E.D. Penn. May 3, 2018) (A case that relied in part on *Volkova* to find that personal injury claims against a freight broker are preempted); *Krauss v. Iris USA, Inc.*, 2018 WL 3632107 (E.D. Penn. July 31, 2018) (The court addressed the same issue on reconsideration and affirmed); *Creagan v. Wal-Mart Transp., LLC*, 2018 WL 6523123 (N.D. Ohio Dec. 12, 2018); *Loyd v. Paul Salazar d/b/a RAS Trucking*, 2019 WL 4577108 (W.D. Okla. Sept. 20, 2019); *Gillum*, Civil Action No. SA-19-CV-1378-XR (W.D. Tex. Jan. 27, 2020); *Zamorano v. Zyna, LLC*, Civil Action No. SA-20-00151-XR (W.D. Tex. May 11, 2020); *Simpson, et al v. Omega Precision, Inc.*, Case No. 34-2017-00210287; *Jackson v. Stevie Trucking Corp.*, Case No. 2019-4634, Civil District Court for the Parish of Orleans, State of Louisiana, *Estate of Flanagan v. BNSF Railway Co.*, 1:21-cv-00014 (S.D. Iowa Nov. 19, 2021);

*Gauthier v. Hard to Stop, LLC*, 2022 WL 344557 (S.D. Georgia Feb. 4, 2022); *Lee v. Werner Enterprises, Inc.*, 2022 U.S. Dist. LEXIS 200848 (N. D. Ohio) (another recent ruling in a personal injury matter where the safety exception was found not to apply) and in *McCarter v. Ziyar Express, Inc., et al.*, 2023 WL 144844 (N.D. Ohio, January 10, 2023).

### 4. PLAINTIFFS' ANALYSIS OF THE SAFETY REGULATION EXCEPTION IS ERRONEOUS.

Plaintiffs contend that their state-law-based negligence claims fall within the FAAAA preemption carve out for safety regulations in Section 14501(c)(2)(A). There are two primary reasons why the safety regulation exception does not save a state negligent hiring claim against a freight broker from preemption under the FAAAA once the Court determines that the preemption provision under §14501 (c) (1) is satisfied. First, the statute exempts from preemption "the safety regulatory authority of a state with respect to motor vehicles…" § 14501(c)(2)(A). This means that because the claims against MoLo are for direct negligence in the selection of a motor carrier for the subject load, Plaintiffs assert common-law claims which are a private right of action, not part of the state regulatory apparatus regulating the activity of freight brokers. As such, negligent hire claims are not contemplated by the safety exception. *See, Estate of Flanagan v BNSF Railway Co.*, 2021 WL 9667999, at *7 (S.D. Iowa). Although some judges came to the contrary conclusion, relying primarily on the Ninth Circuit case of *Miller v C.H. Robinson Worldwide, Inc.*, 976 F. 3d 1016 (9th Cir. 2020), they and *Miller* ignore that the plain meaning of the words "safety regulatory authority of a State" cannot be reasonably interpreted to support the inclusion of private tort claims. To do otherwise is to set aside general principles of

16

statutory construction requiring a plain meaning reading of a statute. *See Lee v Werner Enterprises, Inc.*, 2022 WL 16695207 (N.D. Ohio) (criticizing the holding in *Miller* on that ground). Indeed, the Court in *Lee* accurately notes that "if the safety exception preserved all claims related to motor vehicles, as urged by . . . *Miller*, 'all preempted claims would then be 'saved' by the exception.'" *Id.*, at *4, citing *Creagan v Wal-Mart Trans., LLC*, at 354 F. Supp. 3d at 814. As noted, such a result "would make the entirety of the preemption provision redundant." *Lee*, at *4. Similarly, the Court in *Volkova v C.H. Robinson*, 2018 WL 741441, *4 (N.D. Ill.), came to the same conclusion stating, "the Court cannot ignore the straightforward analysis as laid out by the Supreme Court in *Rowe v New Hampshire Motor Trans. Ass'n*." The *Volkova* court noted that *Rowe* preempted Maine statutes regulating the delivery of tobacco products in spite of the obvious public health objectives to curb underage smoking. In *Rowe*, the Court held that it could not agree "with Maine that the federal law crates an exception on that basis exempting state laws that it would otherwise exempt." *Id*, *4, citing *Rowe* at 552 U.S. at 374.

The second reason the safety regulatory exception does not apply to allow state claims despite the FAAAA preemption is that the exception concerns regulations "with respect to motor vehicles." Plaintiffs' claims against MoLo for the negligent selection of a motor carrier by a freight broker do not concern a regulation of motor-vehicle safety. As noted by the Court in *Estate of Flanagan*, "while the vehicle involved in the collision would be subject to the State's safety regulatory authority, [the broker would not because it] does not own or operate that motor vehicle." *Id*, at *7. In *Gauthier v. Hard to Stop, LLC*, 2022 WL 344557 (S.D. Ga.), the Court determined that a negligent hiring claim against a freight

17

broker was not one "with respect to motor vehicles" under a plain meaning analysis of the language of the exception under §14501 (c)(2)(A). It relied on Supreme Court authority for the principle that "state regulations which are not 'genuinely responsive to safety concerns garner no exemption from [the rule of preemption]'". *Id*., at *10, citing *City of Columbus v Ours Garage & Workers Service, Inc.*, 536 U.S. 424, 442 (2002). The question then becomes whether the claim of negligent selection of a motor carrier by a broker is genuinely responsive to motor vehicle safety. *Gauthier*, at *10, citing *Lopez v Amazon Logistics, Inc.*, 458 F. Supp. 3d 505, 515 (N.D. Tex. 2020). Because the claims against a freight broker, based on allegations of a failure to properly vet the motor carrier selected for the particular load, was "too tenuously connected to motor vehicle safety to fall within §14501 (c)(2)(A)," the exception was patently inapplicable. *Id. See also, Loyd*, 416 F. Supp. 3d at 1300 (same); *Creagan*, 354 F. Supp. at 814 (same); *Gillum*, 2020 WL 44371, at *5 (public safety exception does not apply to a broker because it does not own or operate motor vehicles which are subject to the states regulatory authority).  Finally, the Court in *Gauthier* accurately noted that if the safety regulatory exception applied to freight brokers for claims that they failed to properly choose the right motor carrier with which to transport the freight, the exception "would swallow [the broad] rule of preemption related to brokers services." *Gauthier*, at *10, citing *Loyd*, 416 F. Supp. 3d at 1299.

### 5.  MOLO IS NOT AFRAID OF THE *MILLER V. C.H. ROBINSON* RULING.

Plaintiffs have noted that the United States Court of Appeals for the Ninth Circuit issued the first circuit opinion dealing with FAAAA preemption in the context of personal

injury claims against freight brokers. *Miller, supra*, 976 F.3d 1016 (9th Cir. 2020).  The

U.S. Supreme Court recently declined to grant *certiorari*, so this ruling stands. This does

not mean that *Miller* is now the functional law of the land.  The Solicitor General of the

United States implored the Supreme Court to not take the case because there was no circuit

split, i.e., no other Circuit Courts have had the opportunity to address this issue.  On this

limited basis, the Supreme Court's jurisdiction had not been triggered.  The Ninth Circuit's

ruling does not have binding authority over courts in the 11th or any other circuit.

MoLo will not run from this ruling because, if anything, it supports MoLo's

position.  As MoLo maintains, words mean something.  MoLo has no objection to this

opinion being considered by the Court.  If anything, it demonstrates MoLo's consistent

position that there are two lines of cases that have developed regarding the application of

the preemption contained at 49 U.S.C. § 14501(b)-(c).  *Miller* is from the Ninth Circuit and

this case is pending in a federal court in the Eleventh Circuit thus this opinion is merely

persuasive authority and not binding.  It means little that *Miller* is the first federal circuit

case to render an opinion on 49 U.S.C. § 14501(c).  If this Court reviews that case, it will

find that the panel *unanimously* found that personal injury claims against freight brokers

are "the type of 'public utility' service that falls squarely within the scope of the FAAAA."

*Id.* at 1025.  The panel was only divided over whether the safety regulation exception from

49 U.S.C. § 14501(c) that applies to a "motor vehicle" saved plaintiff's claims from

preemption.  MoLo submits that the majority in that case got it wrong.  The dissent from

Judge Fernandez eloquently and concisely explains why the so-called "safety exception"

is inapplicable to save personal injury claims from preemption.  *Id.* at 1031-1032.  Just as

air carriers are distinguishable from travel agents, Judge Fernandez correctly noted that the majorities' reliance on cases involving tow trucks was in error.  Tow companies own the vehicles and hire the drivers.  *Id.* at 1031.  Again, this Court has a choice.  *Miller* is from the Ninth Circuit and this matter is pending in the Eleventh Circuit, and neither has spoken on the subject of preemption under 49 U.S.C. § 14501(c).  MoLo submits that its requested relief is more faithful to the statutory regime.

## 6.  ATTORNEY'S FEES AND COSTS SHOULD NOT BE AWARDED

MoLo respectfully submits that they are correct and that their arguments have merit, but if the Court should find that they do not, sanctions are not warranted.  Plaintiffs argue that MoLo should be sanctioned for removing this matter to federal court.  MoLo respectfully submits that sanctions are not warranted in this situation.  As already discussed multiple times above, the cases cited by Plaintiffs are not binding decisions on this Court. This Court is free to engage in a *de novo* review of this removal. The Eleventh Circuit has not spoken to the breadth or scope of FAAAA preemption. Thus, this removal was done in good faith.  In addition, since the Notice of Removal was filed, another federal court has reviewed this issue and found similar claims are preempted.  The debate rages on and until the Eleventh Circuit or U.S. Supreme Court speaks to the contours of FAAAA preemption in the context of freight brokers, attorneys should be allowed to be zealous advocates for their clients.

## VI.  <u>CONCLUSION</u>

49 U.S.C. § 14501(c)(1) completely preempts Plaintiffs' state law tort claims and thus provides a basis for removal. Accordingly, MoLo respectfully requests that the Court

deny Plaintiffs' Motion to Remand.  MoLo further requests the Court to grant it such other

relief to which the Court deems MoLo entitled under the presented circumstances.

Respectfully submitted this the 13th day of March, 2023.

/s/ Joel H. Pearson
**JOEL H. PEARSON ASB-8033-N71J**
*Attorney for Defendant MoLo Solutions, LLC*

**OF COUNSEL:**
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
445 Dexter Avenue, Suite 9045
Montgomery, Alabama 36102-2148
Telephone:    334-387-7680
Facsimile:     334-387-3222
E-mail: jpearson@ball-ball.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing document upon
the following parties and/or attorneys through the Court's electronic filing system and/or
by U.S. First Class Mail on this the 13th day of March, 2023:

Jere L. Beasley
J. Greg Allen                                       Calvin Poole, III
J. Cole Portis                                      Poole & Poole
Benjamin E. Baker, Jr.                              Post Office Box 308
Stephanie Monplaisir                                Greenville, AL 36037
Beasley, Allen, Crow, Methvin,                      calvin@poolelaw.com
    Portis & Miles, P.C.
Post Office Box 4160                                William E. Pipkin, Jr.
Montgomery, AL 36104                                Austill, Lewis, Pipkin & Maddox, P.C.
jere.beasley@beasleyallen.com                       Post Office Box 2885
greg.allen@beasleyallen.com                         Mobile, Alabama 36652-2885
cole.portis@beasleyallen.comn                       bpipkin@maplaw.com
ben.baker@beasleyallen.com
stephanie.monplaisir@beasleyallen.com

Richard W. Lewis
Joseph E.B. Stewart
Brandi B. Frederick
Austill Lewis Pipkin & Maddox, P.C.
600 Century Park South, Suite 100
Birmingham, Alabama 35226
r-lewis@maplaw.com
jstewart@maplaw.com
bfrederick@maplaw.com

Timothy B. Simmons
506 E. Commerce Street
Greenville, AL 36037
tbsimmonslaw@gmail.com

Jannea S. Rogers
Blake T. Richardson
Adams and Reese LLP
P.O. Box 1348
Mobile, Alabama 36633
jannea.rogers@arlaw.com
blake.richardson@arlaw.com

John C. Morrow
Burr & Forman, LLP
420 20th St. N., Ste. 3400
Birmingham, AL 35203
jmorrow@burr.com

Scott Burnett Smith
Hunter W. Pearce
Bradley Arant Boult Cummings LLP
200 Clinton Avenue W, Suite 900
Huntsville, AL 35801
ssmith@bradley.com
hpearce@bradley.com

Charles A. Stewart III
Bradley Arant Boult Cummings LLP
445 Dexter Avenue, Ste. 9075
Montgomery, AL 36104
cstewart@bradley.com

Riley A. McDaniel
Bradley Arant Boult Cummings LLP
1819 5th Ave. N., #200
Birmingham, AL  35206
rmcdaniel@bradley.com

Thomas L. Oliver, II
Carr Allison
100 Vestavia Parkway
Birmingham, AL 35216
toliver@carrallison.com

/s/ Joel H.  Pearson
OF COUNSEL